# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| EDWARD BRADLEY, ) | |
| ) | |
| Movant, ) | |
| ) | Cv. No. 2:15-cv-02666-JPM-dkv |
| v. ) | Cr. No. 2:12-cr-20203-JPM-1 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Edward Bradley, Bureau of Prisons register number 25368-076, who is currently incarcerated at the Federal Correctional Institution in Forrest City, Arkansas. (§ 2255 Mot., *Bradley v. United States*, No. 2:15-cv-02666-JPM-dkv (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court DENIES the § 2255 Motion.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 12-20203

On August 24, 2012, a federal grand jury returned a three-count indictment. Count 1 of the indictment charged that, on or about Ju[ne][1] 22, 2011, Bradley knowingly and intentionally

---

[1] Although the Indictment refers to the date of the transaction as July 22, 2011, the Presentence Investigative Report clarifies that the actual date of the transaction referred to in

possessed with the intent to distribute and did distribute a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1). (Indictment, *United States v. Bradley*, No. 2:12-cr-20203-JPM (W.D. Tenn.), ECF No. 1.) Count 2 charged that, on or about July 26, 2011, Bradley knowingly and intentionally possessed with the intent to distribute and did distribute a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). (Indictment, *id.*, ECF No. 1.) Count 3 charged that, on or about July 27, 2011, Bradley, a convicted felon, knowingly possessed a Hi-Point 9mm Lugar pistol in violation of 18 U.S.C. § 922(g). The factual basis for the charges is stated in the presentence report ("PSR"):

### The Offense Conduct

4. According to the investigative file, agents with the Federal Bureau of Investigation (FBI) utilized the cooperation of a confidential source (hereinafter referred to as the "CS") in the investigation of an individual suspected of distributing crack cocaine and firearms. Due to a series of telephone intercepts, audio surveillance and controlled purchases, authorities developed **Edward Bradley, a.k.a. "Chubb," a.k.a. "OG Chubb"** as their primary person of interest.

5. On June 14, 2011, authorities recorded a phone conversation between the CS and **Bradley**. During the discussion, the CS requested the purchase of $1,000.00 worth of crack cocaine from **Bradley**.

6. On June 17, 2011, authorities recorded a phone conversation between the CS and **Bradley**. During the discussion, the CS and **Bradley** coordinated an appropriate and safe location for the drug transaction.

7. On June 21, 2011, authorities recorded a phone conversation between the CS and **Bradley**. During the discussion, the CS stated that he/she wanted to purchase $600.00 worth of some "hard" and "soft" from **Bradley**. Authorities knew that the CS and **Bradley** were discussing the purchase of crack cocaine and cocaine.

---

Count 1 was June 22, 2011. (PSR ¶ 8.) At the change of plea hearing, the parties agreed that this was the result of a typographical error and the Court granted defense counsel's motion to correct the error in the Indictment. (*See* Change of Plea Hr'g Tr. 26:11-30:12, *id.*, ECF No. 72.)

8. On June 22, 2011, authorities utilized the CS in a controlled purchase of crack cocaine and cocaine. Authorities provided the CS with $1,000.00 in buy money and also attached an audio recording device to his/her person. The CS proceeded to the Bristol Gardens Apartments located at 3803 Given Road in Memphis, Tennessee and met with **Bradley**. The CS made contact with **Bradley** at his home in apartment no. 4 and purchased $1,000.00 worth of **crack cocaine (10.1 grams net weight)** and **cocaine (11.7 grams net weight)** and surrendered the drugs to authorities. [It should be noted, the Indictment refers to the date of this transaction as "July 22, 2011."]

9. On July 15, 2011, authorities recorded a phone conversation between the CS and **Bradley**. During the discussion, the CS stated that he/she wanted to purchase a firearm from **Bradley** for personal protection. **Bradley** advised the CS that a firearm would be made available for purchase in the future.

10. On July 26, 2011, authorities utilized the CS in a controlled purchase of crack cocaine and cocaine. Authorities provided the CS with $1,500.00 in buy money and also attached an audio and video recording device to his/her person. The CS proceeded to the Bristol Gardens Apartments and met with **Bradley** at his home in apartment no. 4. The CS made contact with **Bradley** and purchased $1,500.00 worth of **crack cocaine (18.4 grams net weight)** and **cocaine (20.7 grams net weight)** and surrendered the drugs to authorities.

11. The drugs that were seized from the CS were confirmed by the Drug Enforcement Administration as **28.5 grams of crack cocaine** and **32.4 grams of cocaine** (total net weight).

12. On July 27, 2011, authorities utilized the CS in a controlled purchase of a firearm. The CS was provided with $500.00 for the purchase of a firearm. The CS met with **Bradley** at his home. The CS purchased a **Hi-Point Luger, 9mm semiautomatic handgun (serial no. P190064)** and surrendered the firearm to authorities.

13. A Firearms Trace Summary report was provided by the government regarding the **Hi-Point Luger, 9mm semiautomatic handgun (serial no. P190064)**. According to the report, the handgun was purchased on February 13, 2004, from Mike's Gun & Pawn Shop in Ripley, Mississippi. According to an Interstate NEXUS Specialist with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the firearm was manufactured outside the State of Tennessee; therefore, traveled through interstate commerce. At the time of the offense, the defendant had previously been convicted of a felony in Shelby County, Tennessee.

(PSR ¶¶ 4-13.)

Pursuant to a written plea agreement, Bradley appeared before the Court on January 3, 2013, to plead guilty to Counts 1 and 3 of the Indictment. (Min. Entry, *id.*, ECF No. 30; Plea Agreement, *id.*, ECF No. 33.) At a hearing on January 22, 2014, the Court sentenced Bradley to a term of imprisonment of one hundred months as to each count, to be served concurrently, to be followed by a three-year period of supervised release. (Min. Entry, *id.*, ECF No. 51.)[2] Judgment was entered on the same day. (J. in a Criminal Case, *id.*, ECF No. 52.) Bradley did not appeal.

### B. Case Number 15-2666

On October 5, 2015, Bradley filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). (§ 2255 Mot., *Bradley v. United States*, No. 2:15-cv-02666-JPM-dkv (W.D. Tenn.), ECF No. 1.) This motion presents the following issue: "The Court sentenced Edward Bradley as a career offender under U.S.S.G. [§] 4B1.1 but that classification is erroneous after application of Johnson v. United States, 135 S. Ct. 2551 (2015)." (§ 2255 Mot. at 5, *id.*, ECF No. 1.)

---

[2] The 2012 edition of the *Guidelines Manual* was used to calculate Bradley's sentencing range. (PSR ¶ 17.) Pursuant to § 2D1.1 of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for drug trafficking is 26 if the defendant possessed with the intent to distribute at least 100 kilograms but less than 400 kilograms of marijuana. Bradley received a two-level enhancement pursuant to U.S.S.G. 2D1.1(b)(1) because the offense involved the possession of a dangerous weapon, resulting in an adjusted offense level of 28. Bradley received a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of 25. Given his criminal history category of V, the guideline sentencing range was 100-125 months.

Because of his prior convictions for violent felonies, however, Bradley was sentenced as a career offender pursuant to U.S.S.G. § 4B1.1. Pursuant to U.S.S.G. § 4B1.1(b)(3), his criminal history category was VI and the offense level was 32. After the reduction for acceptance of responsibility, the total offense level was 29. The guideline sentencing range was 151-188 months.

In an order issued on October 6, 2015, the Court directed the Government to respond to Bradley's § 2255 Motion. (Order, *id.*, ECF No. 5.) The Government filed its Answer on October 30, 2015. (Answer, *id.*, ECF No. 6.) Bradley filed a Reply on December 23, 2015. (ECF No. 10.)

## II.    LEGAL STANDARD AND ANALYSIS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

"[A] § 2255 motion is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal quotation marks omitted). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section

2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

The Government argues, *inter alia*, that Bradley waived his right to pursue the instant motion when he waived the right to collaterally attack his sentence when he pleaded guilty. (Answer at 9, *Bradley v. United States*, No. 2:15-cv-02666-JPM-dkv (W.D. Tenn.), ECF No. 6.) Bradley argues that because "*Johnson* has eviscerated the residual clause," the "presence of this manifest injustice" should excuse him from his plea waiver. (Reply at 6-8, *id.*, ECF No. 10.)

"It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) (quoting *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 238 (1973) ("Guilty pleas have been carefully scrutinized to determine whether the accused knew and understood all the rights to which he would be entitled at trial, and that he had intentionally chosen to forgo them.") To that end, a district court is required to "inform the defendant of, and determine that the defendant understands" his rights and the potential results of a guilty plea, including any "provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N); *see generally* Fed. R. Crim. P. 11(b)(1).

The Court finds that Bradley's waiver of the right to collateral review in his plea agreement was a valid waiver, and therefore, Bradley waived his right to § 2255 relief. A defendant waives the right to file a § 2255 motion if he has waived the right to collateral review in his plea agreement, except in limited circumstances such as when the § 2255 relief sought is based upon a claim of ineffective assistance of counsel. *Watson v. United States*, 165 F.3d 486, 489 & n.4 (6th Cir. 1999). Bradley's plea agreement states:

> 1. Mr. BRADLEY will enter a plea of guilty to Count One of the Indictment . . . .
> . . . .
> 5. Mr. BRADLEY acknowledges that he has been advised and does fully understand the nature of the charge to which the plea is offered and the maximum possible penalties provided by law.
> . . . .
> 7. Mr. BRADLEY acknowledges that he has been advised and does fully understand that if he proceeded to trial and had been convicted, that he would have had the right to appeal the conviction. He understands that by pleading guilty, he gives up the right to appeal the conviction. Based on concessions made in this plea agreement by the United States, Mr. BRADLEY also hereby waives his rights to appeal his sentence, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. In this regard, it is also understood that Mr. BRADLEY *waives his right to challenge the manner in which the sentence was determined*, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, *in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255*.
> . . . .
> 11. Mr. BRADLEY has discussed the terms of the foregoing plea agreement with his attorney and is satisfied with his advice and counsel. *Being aware of all the possible consequences of his plea*, Mr. BRADLEY has independently decided to enter his plea of guilty on his own free will, and affirms this agreement on the date and by his signature below.

(Plea Agreement at 1-4 (emphasis added), *United States v. Bradley*, No. 2:12-cr-20203-JPM (W.D. Tenn.), ECF No. 33.)

At Bradley's change of plea hearing, the plea agreement was read to Bradley, and the district court asked him if he understood the agreement; if he had read the agreement for himself; if he had discussed it with his attorney; and if his attorney had gone over it adequately or fully. (*See* Change of Plea Hr'g Tr. 5:20-25, 6:20-7:1, 7:5-6, 8:11-13:21, 14:21-24, *id.*, ECF No. 72; Min. Entry, *id.*, ECF No. 30.) Bradley answered in the affirmative to each question. (*Id.*) Bradley also stated that no one had attempted to force him to sign the agreement and that he had signed the agreement of his own free will. (*Id.* at 7:11-13, 15:3-13.) Additionally, Bradley answered in the affirmative when the Court specifically asked if Bradley understood "that by entering into this plea agreement . . . [he had] waived or given up [his] right to appeal or collaterally attack all or a part of the sentence in this case." (*Id.* at 18:11-16.) At Bradley's sentencing hearing, the Court again addressed Bradley's waiver of his right to appeal and to collaterally attack his sentence. (*See* Sentencing Hr'g Tr. 48:1-49:4, *United States v. Bradley*, No. 2:12-cr-20203-JPM (W.D. Tenn.), ECF No. 68; Min. Entry, *id.* ECF No. 51.) Bradley reaffirmed that he wished to retain the benefits in his plea agreement and give up his right to appeal his sentence. (*Id.*) Accordingly, the Court finds that Bradley's waiver of the right to collateral review in his plea agreement was made voluntarily and knowingly. *See United States v. Gravette*, 230 F.3d 1360, 2000 WL 1359622, at *3 (6th Cir. 2000) (unpublished table decision) ("While Appellants argue now that they were confused by the proceedings, at no time did they express any confusion or raise any questions, despite several opportunities to do so. The district court committed no clear error in accepting the pleas as knowing and voluntary, and therefore Appellants are bound to the plain meaning of their agreements.").

Additionally, Bradley's waiver is effective regardless of the new rule set forth in *Johnson v. United States*, 135 S. Ct. 2551 (2015). After the Supreme Court's decision in *United States v.*

*Booker*, 543 U.S. 220 (2005), the Sixth Circuit considered whether the new law invalidated a defendant's waiver of his right to appeal. *United States v. Bradley*, 400 F.3d 459, 462-63 (6th Cir. 2005). The court found that "where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at 463. To hold otherwise and disturb the plea agreement would "threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, [would] threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal." *Id.* at 464. Without determining whether *Johnson* applies to the instant matter, the Court finds that *Johnson* did not invalidate Bradley's waiver of his right to collateral review. Accordingly, Bradley's waiver is valid and his § 2255 Motion is DENIED.

**III.        APPEAL ISSUES**

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) which satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, Movant's claim is barred by his plea agreement and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED,

pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[3]

IT IS SO ORDERED this 16th day of February, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[3] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.